**Todd R. Johnston, OSB 992913**
tjohnston@hershnerhunter.com
**Amanda M. Walkup, OSB 934508**
awalkup@hershnerhunter.com
**Elizabeth M. Stubbs, OSB 214880**
estubbs@hershnerhunter.com
Hershner Hunter, LLP
675 Oak Street, Suite 400
Eugene, OR 97401
Telephone: (541) 686-8511
Facsimile: (541) 344-2025

Of Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **DANIEL RAY LEMONS**; | Case No. 3:24-cv-00340-CL |
| Plaintiff, | **Plaintiff Daniel Ray Lemons's** |
| v. | **SECOND AMENDED COMPLAINT** |
| **UNITED STATES OF AMERICA; AARON BROOKS; NANCY BOBS; REYNOLD BILLS; ISRAEL JACQUEZ; AND DOES 1 -10**; | *Bivens* Claim For 8th Amendment Violation; Federal Tort Claim For Negligence, Assault, and Battery; |
| Defendant. | Demand for Jury Trial |

Plaintiff alleges:

## JURISDICTION AND VENUE

1.      This Court has original subject matter jurisdiction of this action pursuant to 28

U.S.C. §1331 and § 1346(b) as arising under the Constitution and/or laws of the United States.

Plaintiff's claims are predicated, in part, upon the Federal Claims Tort Claims Act ("FTCA"),

Page 1 – SECOND AMENDED COMPLAINT
4905-2260-1248

28 U.S.C. § 2671*, et seq.;* the United States Supreme Court's ruling in *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 397 (1971); as well as pursuant to the Eighth Amendment to the Constitution of the United States.  Plaintiff further invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367(a) with respect to any state law claims, as they are related to and form part of the same case or controversy as claims based on the federal Constitution and/or laws.

2.    Pursuant to 28 U.S.C. § 1391 and § 1402 and because this is an action against the United States of America and its agents, venue is proper within the District of Oregon.  The District of Oregon is where a substantial part of the events giving rise to the claims occurred, and this district is where Aaron  Brooks ("Defendant Brooks"), Nancy Bobs ("Defendant Bobs"), Reynold Bills ("Defendant Bills"), Israel Jacquez ("Defendant Jacquez"), and DOES 1-10 were last known to reside.

**PARTIES**

3.    At all relevant times, Plaintiff was a prisoner in the custody of the Federal Bureau of Prisons ("BOP").  Beginning on or around November 15, 2023, Plaintiff was incarcerated at Federal Correctional Institution Sheridan, in Sheridan, Oregon ("FCI Sheridan").  In June 2024, Plaintiff was transferred to Federal Correctional Institution Butner Medium II in Butner, North Carolina ("FCI Butner").

4.    Upon information and belief, at all relevant times, the United States Department of Justice ("DOJ") is an agency of the Defendant United States of America ("Defendant United States"), the BOP is a division or agency of the DOJ, FCI Sheridan is a division or agency of the BOP, and, therefore Defendant United States was and still is a sovereign entity named herein pursuant to the FTCA.

5.      Upon information and belief, at all relevant times, Defendant United States employed  Defendant Jacquez as Warden; until on or about April 2024, employed Defendant Bobs as Associate Warden of Operations; and from on or about April 2024 employed  Defendant Bills as Associate Warden of Operations, who bear responsibility for the relevant operations at FCI Sheridan.

6.      Upon information and belief, Defendant Brooks was FCI Sheridan's Food Services Administrator at least between November 15, 2023 and June 2024.  At all relevant times, Defendant Brooks was an employee or agent of the United States and is sued herein in his individual capacity.

7.      DOES 1-10 represent one or more members of the BOP staff of FCI Sheridan who were charged with the care and treatment of Plaintiff while he was an inmate of FCI Sheridan from November 15, 2023, through June 2024.  The identities of DOES 1-10 are not presently known, but they are believed to have been employees or agents of the United States at all relevant times and are sued herein in their individual capacities.

8.      Together, DOES 1-10, Defendant Brooks, Defendant Bobs, Defendant Bills, and Defendant Jacquez, each in their individual capacity as defendants, are referred to herein as Individual Defendants.

### FACTUAL ALLEGATIONS

9.      As Warden, Defendant Vasquez was responsible for FCI Sheridan's total operation.  Defendant Jacquez was responsible for all major activities, including transfers, furloughs, and other community activities.  Defendant Jacquez was responsible for responding to all administrative remedy requests according to BOP policy.  As the person responsible for all FCI Sheridan operations, Defendant Jacquez was responsible for supervising Defendant Brooks,

Defendant Bobs, Defendant Bills, and all other DOES 1-10, and ensuring they fulfilled their job duties.

10. The Associate Warden of Operations is responsible for supervising the day-to-day operations of the Food Service Department and the Health Care Services Department.  As Associate Warden, at relevant times, either Defendant Bobs or Defendant Bills was the person responsible for supervising the day-to-day operations of the Food Service Department and was responsible for supervising Defendant Brooks, including ensuring he fulfilled his job duties as a Food Service Administrator.

11. In his capacity as an agent, servant, and employee of Defendant United States, and within the scope of his employment, Defendant Brooks had oversight and direction of Food Service functions and was responsible for compliance with BOP policies related to Food Services.  Further, Defendant Brooks was responsible for consulting with a Bureau Registered Dietitian if a special diet other than the most common medical diet food offers was required or if a special diet was required to ensure adequate nutrition.

12. One or more Individual Defendants were responsible for approving which prescription orders, including the order for Plaintiff's epi-pen, could be filled directly to inmates and self-administered.  One or more Individual Defendants were responsible for deciding when and how a medication could be administered to an inmate when an inmate was not allowed to self-administer a prescribed medication.  One or more Individual Defendants were responsible for approving Plaintiff's medically-required special diet, and for ensuring that FCI Sheridan complied with the special diet order.

13. Upon entering federal custody, BOP medical professionals conducted a blood test to diagnose Plaintiff's food allergies.  The blood test confirmed that Plaintiff is severely allergic

Page 4 – SECOND AMENDED COMPLAINT
4905-2260-1248

to onions, peanuts, fish, and eggs.  He is also mildly allergic to wheat, tree nuts, lactose, and soy. Consequently, BOP medical professionals ordered that Plaintiff receive meals on a Special Diet Tray ("Special Diet Tray"), which included only foods that Plaintiff could safely eat.  Some time later, BOP transferred Plaintiff to FCI Sheridan.  Plaintiff arrived at FCI Sheridan on November 15, 2023.

14.     Upon information and belief, FCI Sheridan obtained Plaintiff's medical files on November 15, 2023.  These files were available to one or more Individual Defendants on the same day and BOP medical professionals advised Defendant Brooks and the kitchen staff of Plaintiff's dietary needs the next day, November 16, 2023.

15.     For the first few weeks that Plaintiff lived at FCI Sheridan he received a Special Diet Tray with food that he could safely eat.  However, on January 6, 2024, Defendant Brooks told Plaintiff, "We are no longer going to try to fix a diet for you, eat this regular tray or do without."

16.     On January 8, 2024, Dr. Nelson Ayala-Rubio completed a Medical Duty Status report for FCI Sheridan affirming that Plaintiff was allergic to peanuts, other assorted nuts, fish, seafood, onions, and wheat, and that Plaintiff was fit for employment at FCI Sheridan.

17.     After Defendant Brooks' encounter with Plaintiff on January 6, 2024, Plaintiff regularly either received a Special Diet Tray with unsafe food or did not receive a Special Diet Tray.  Between January 6, 2024 and June 2024, Plaintiff suffered at least four allergic reactions due to one or more Individual Defendants' failure to provide Plaintiff with safe food.  On multiple occasions, Plaintiff was transferred to Willamette Valley Medical Center ("WVMC") for emergent care due to a severe anaphylactic reaction.

4905-2260-1248

18.     On February 14, 2024, FCI Sheridan personnel, upon the direction of Defendant Brooks, provided Plaintiff with a burger that contained onion. Plaintiff took a few bites before he realized that it had onion. He notified FCI Sheridan personnel and self-administered his epi-pen. Plaintiff was transported to WVMC and remained under observation for approximately five hours. At some point, his blood-oxygen levels dropped to the low 80s.

19.     For every breakfast between February 13, 2024 through March 25, 2024, Plaintiff's Special Diet Tray included unsafe oatmeal. Defendants knew that the oatmeal was dangerous to Plaintiff and the oatmeal packaging specifically stated that it was unsuitable for people allergic to nuts because it was processed in a facility with peanuts and tree nuts. Plaintiff advised one or more Individual Defendants of this fact almost every day and was ignored. Because the food he was provided by Defendants was unsafe, Plaintiff went without food most mornings.

20.     On March 24, 2024, Plaintiff was hospitalized as a result of consuming and/or being exposed to oatmeal.

21.     The day after he was hospitalized Defendants again provided him oatmeal for breakfast.

22.     On April 5, 2024, FCI Sheridan personnel provided Plaintiff with a meal containing onion. Plaintiff unknowingly ate the onion and suffered an allergic reaction that included stomach cramps, numbing of the mouth, and an irritated throat. Plaintiff notified FCI Sheridan personnel that he needed prompt treatment, but it took one or more Individual Defendants approximately one hour and 25 minutes to authorize and administer or make available any medication to Plaintiff.

Page 6 – SECOND AMENDED COMPLAINT
4905-2260-1248

23.    In June 2024, one or more Individual Defendants denied Plaintiff the right to carry an epi-pen and to self-administer it in the event he consumed an allergen. Consequently, Plaintiff was entirely dependent on FCI Sheridan and one or more Individual Defendants to promptly take remedial action to treat an oncoming allergic reaction, which they failed to do.

24.    On June 30, 2024, Plaintiff was again served unsafe foods that triggered a severe allergic reaction. He promptly notified a DOE and requested his epi-pen. Instead of providing him the epi-pen, DOE, upon the direction of at least one Individual Defendant, transported him to a holding cell for observation and placed his epi-pen outside of his cell just out of reach. For several hours, Plaintiff felt his throat swell up and close, his extremities become numb, and his breathing become more labored while he stared at potential relief only a few feet away. Plaintiff could do nothing to mitigate his allergic reaction while one or more Individual Defendants did not treat nor allow him to treat his anaphylaxis.

25.    After several hours of worsening symptoms, one or more Individual Defendants finally administered the epi-pen, declared a medical emergency, and transported Plaintiff to WVMC. Plaintiff was carried out on a stretcher. Plaintiff's treating physician at WVMC determined that, had one or more Individual Defendants waited any longer to authorize medical treatment and transfer to WVMC, Plaintiff likely would have died because his allergic reaction was left untreated for so long. Plaintiff remained in the intensive care unit at WVMC overnight and Plaintiff received antihistamine medications to treat his ongoing allergic reaction. Upon Plaintiff's return to FCI Sheridan, one or more Individual Defendants refused or directed another to refuse to fill the prescription orders from WVMC's treating physician.

26.    Following his first hospitalization, Defendants continued to provide and expose Plaintiff to food containing known allergens. In the instances in which Plaintiff was aware of the

Page 7 – SECOND AMENDED COMPLAINT
4905-2260-1248

allergen, he refused the tray and requested a replacement. However, one or more Individual Defendants refused to provide him with a replacement tray with safe food. As a result, Plaintiff sometimes went without food for multiple meals in a row.

27.    On occasion, DOES 1-10 refused to request a replacement tray from the kitchen staff and told Plaintiff things like, "I ain't food service what do you want me to do about it. That's what they sent,"; "That's what they sent. They won't send another tray;" or "Nothing I can do." At various times, DOES 1-10 told him to "eat it or do without," "eat it or don't, I don't care," or "eat it or don't we don't care, you are lucky I am even feeding you at all."

28.    When DOES 1-10 did request a replacement tray for Plaintiff, the kitchen staff, upon direction of Defendant Brooks, often refused to provide one. DOES 1-10 reported to Plaintiff that, "Food service won't send nothing else," and "It's all the kitchen will send for you."

29.    While incarcerated at FCI Sheridan, Plaintiff lost approximately thirty-eight (38) percent of his body weight and was hospitalized three times in four months for severe anaphylactic reactions. In addition to the severe anaphylactic reactions and significant weight loss, Plaintiff has suffered and continues to suffer from extreme hunger, fatigue, dizziness, gastrointestinal distress, vomiting, weakness, pain, and loss of consciousness.

30.    Every time Plaintiff receives a meal tray, he thinks to himself "here we go again." He is scared to eat, worried that BOP officials will continue to disregard his dietary needs, agitated because he is always hungry, and severely anxious and depressed as a result of his post-traumatic stress from his near-death experiences while in BOP custody. While in BOP custody, he is completely within the care and control of BOP officials who deliberately disregard his medical needs.

31.     In or around June 2024, Plaintiff was transferred to FCI Butner where he continues to be deprived of adequate, uncontaminated food.

## FIRST CLAIM FOR RELIEF

### (*Bivens* Claim for 8th Amendment Violation, Deliberate Indifference)

For its First Claim For Relief, Plaintiff alleges the following against the Individual Defendants:

32.     Plaintiff realleges paragraphs 1 through 31 above as if fully set forth herein.

33.     Individual Defendants at all relevant times acted under the color of law.  FCI Sheridan employed Individual Defendants between November 15, 2023, and the date Plaintiff was transferred in late June 2024.  Individual Defendants interacted with Plaintiff only in the course and scope of their employment.

34.     Plaintiff was subject to insufficient, improper, and in some cases outright denied, medical treatment by the Individual Defendants.

35.     Plaintiff repeatedly made Individual Defendants aware of his medical needs and that his food was unsafe for him to eat.  Individual Defendants recklessly and with deliberate indifference to Plaintiff pain and suffering and the future consequences of their acts and omissions, either treated Plaintiff in an insufficient manner, refused to treat Plaintiff, refused to take the necessary steps to secure Plaintiff a special diet that would have remedied his needs, and/or denied Plaintiff prompt and ready access to his medication.

36.     The acts and omissions of the Individual Defendants constituted the unnecessary and wanton infliction of pain, proscribed by the Eighth Amendment.  The acts and omissions of the Individual Defendants were sufficiently serious to constitute a violation of Plaintiff's constitutional rights.

37.     At all relevant times, Plaintiff suffered from, and continues to suffer from, severe food allergies.  A severe food allergy is a relatively common medical condition that is easily treatable with appropriate preventative measures and/or prompt remedial care.  Individual Defendants were each deliberately indifferent to Plaintiff's medical needs, and it resulted in significant pain and suffering.

38.     Individual Defendants knew of and disregarded the risk to Plaintiff's safety when they repeatedly exposed him to unsafe food and caused him to suffer severe allergic reactions.

39.     Individual Defendants were each personally involved with Plaintiff's care, or lack thereof.  Defendant Brooks repeatedly either served or directed DOES 1-10 to serve, Plaintiff's food that was unsafe for him to eat.  Defendant Brooks failed to procure replacement meals when Plaintiff received food that was unsafe for him to eat, or directed DOES 1-10 not to provide a replacement tray.  Defendant Brooks failed to consult with a Bureau Registered Dietitian to establish a special diet for Plaintiff to ensure he received adequate nutrition given his medically required dietary restrictions.  DOES 1-10 include the correctional officers that served Plaintiff his regular meals and who failed to request replacement trays when they served Plaintiff food that was unsafe for him to eat.  At least one Individual Defendant denied Plaintiff the ability to carry an epi-pen on his person and self-administer his epi-pen.  At least one Individual Defendant denied Plaintiff prompt access to his epi-pen when he suffered a severe allergic reaction on April 5, 2024.  Defendant Bobs and Defendant Bills failed to diligently supervise Defendant Brooks to ensure Defendant Brooks fulfilled his job duties as a BOP Food Service Administrator and to provide Plaintiff with adequate medical care.  Defendant Jacquez failed to diligently supervise the Defendant Bobs, Defendant Bills, Defendant Brooks, and DOES 1-10 to ensure they fulfilled their job duties and provided Plaintiff with adequate medical care.

40.    Plaintiff's condition was diagnosed by BOP medical professionals on more than one occasion.  Severe food allergies is a condition so obvious that a lay person would easily recognize the necessity for adequate preventative care to treat the condition.

41.    As a direct result of their deliberate indifference to Plaintiff's medical needs, Individual Defendants caused Plaintiff to suffer numerous severe allergic reactions, three of which required hospitalization and at least one of which was exacerbated by Individual Defendants' deliberate withholding of medication.  Individual Defendants' actions and inaction caused Plaintiff severe physical, mental, and emotional pain, suffering, and anguish.

42.    By reason of the foregoing, Plaintiff is entitled to compensatory and punitive damages in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF

### (Federal Tort Claim for Negligence)

For its Second Claim for Relief, Plaintiff alleges the following against Defendant United States:

43.    Plaintiff realleges paragraphs 1 through 31 above as if fully set forth herein.

44.    At all relevant times, FCI Sheridan was responsible for providing Plaintiff with meals that met BOP's standards for minimal nutrition and were safe for Plaintiff to eat.

45.    During the course of Plaintiff's federal incarceration, Defendant United States, by its agents and employees, at a minimum, negligently, carelessly, and unskillfully rendered medical care to Plaintiff by, at a minimum, negligently, carelessly, and unskillfully provided or exposed Plaintiff to food that triggered severe anaphylaxis.

46.    By reason of the at least negligent and careless acts, Defendant United States, by their agents and employees, and by reason of the failure of said defendants to heed Plaintiff's

Page 11 – SECOND AMENDED COMPLAINT
4905-2260-1248

medical needs, Plaintiff suffered injury in the form of gastrointestinal distress, skin rashes and hives, numbness and irritation to his throat and mouth, difficulty breathing, significant weight loss, extreme hunger, fatigue, dizziness, weakness, severe mental and emotional distress and anguish, and in other respects was damaged.

47.    By reason of the foregoing, Plaintiff is entitled to compensatory damages in an amount to be proven at trial.

## THIRD CLAIM FOR RELIEF

### (Federal Tort Claim for Assault)

For its Third Claim for Relief, Plaintiff alleges the following against Defendant United States:

48.    Plaintiff realleges paragraphs 1 through 31 above as if fully set forth herein.

49.    DOE, whom Plaintiff recalls as Officer Anglea was, at all relevant times, a BOP employee.  He only interacted with Plaintiff on BOP property while he performed his other job duties.

50.    On February 16, 2024, at approximately 8:00 am, DOE known as Officer Anglea entered Plaintiff cell unaccompanied by any other prison official. Plaintiff then apprehended an imminent threat of harmful contact.  At the time, Plaintiff held his Special Diet Tray.  DOE known as Officer Anglea grabbed the Special Diet Tray, forcibly removed it from Plaintiff's person, and then threw it outside the cell.  DOE known as Officer Anglea briefly left the cell before reentering and closing the cell door.  He then punched Plaintiff twice in the right eye.

51.    As a result of the assault, Plaintiff suffered personal injury.  Plaintiff promptly reported the assault to a BOP medical professional, who then reported the assault to Lieutenant Jones.  Lieutenant Jones met with Plaintiff that morning to document Plaintiff's report against

Officer Anglea.  Lieutenant Jones photographed Plaintiff's injuries and Dr. Nelson Ayala-Rubio examined Plaintiff's injuries.  Plaintiff's injuries included bruising of the right eye, and physical, mental, and emotional pain and suffering.

52.    Officer Anglea, in the course and scope of his employment, has the authority to execute searches and seize evidence.  BOP officers have the authority to search an inmate's housing, work area, personal items, and person on a routine or random basis at any time. BOP officers have the authority to seize contraband whenever they find it.  Consequently, Officer Anglea, as a BOP officer, has the authority to execute searches and seizures.

53.    If Defendant United States were a private person, it could be sued under Oregon law for an assault by its employees.  Under Oregon law, an employer may be held vicariously liable for the torts of its employees.

54.    By reason of the foregoing, Plaintiff is entitled to compensatory damages in an amount to be proven at trial.

**FOURTH CLAIM FOR RELIEF**

**(Federal Tort Claim for Battery)**

For its Fourth Claim for Relief, Plaintiff alleges the following against Defendant United States:

55.    Plaintiff realleges paragraphs 1 through 54 above as if fully set forth herein.

56.    When Officer Anglea entered Plaintiff's cell in the instance described above, Plaintiff both apprehended an imminent threat of harmful contact, and then suffered harmful contact.  DOE known as Officer Anglea forcibly contacted Plaintiff when he wrenched the tray from Plaintiff's hands and punched Plaintiff twice in the right eye.  As a result of DOE's forcible

contact, Plaintiff suffered personal injury.  Plaintiff injuries included bruising of the right eye, and physical, mental, and emotional pain and suffering.

57.    By reason of the foregoing, Plaintiff is entitled to compensatory damages in an amount to be proven at trial.

## FIFTH CLAIM FOR RELIEF

### (*Bivens* Claim for 8th Amendment Violation, Excessive Force)

For its First Claim For Relief, Plaintiff alleges the following against DOE known as Officer Anglea ("Officer Anglea"):

58.    Plaintiff realleges paragraphs 1 through 57 above as if fully set forth herein.

59.    Officer Anglea at all relevant times acted under the color of law.  FCI Sheridan employed Officer Anglea between November 15, 2023, and the date Plaintiff was transferred in late June 2024.  Officer Anglea interacted with Plaintiff only in the course and scope of his employment.

60.    The acts of Officer Anglea constituted the unnecessary and wanton infliction of pain, proscribed by the Eighth Amendment, and were sufficiently serious to constitute a violation of Plaintiff's constitutional rights. Officer Anglea caused unnecessary and wanton pain when he used excessive force against Plaintiff on February 16, 2024.

61.    Officer Anglea used excessive force against Plaintiff that was unreasonable under the circumstances, malicious, sadistic, and for the purpose of causing injury.  Officer Anglea had already secured Plaintiff's meal tray the first time he entered the cell on February 16, 2024.  At the time, neither Plaintiff nor any other inmate in the area posed a threat to FCI Sheridan personnel or another inmate.  Thus, when Officer Anglea punched Plaintiff twice in the right eye,

he did so with no legitimate purpose and instead punched him for reasons that were unreasonable under the circumstances, malicious, sadistic, and for the sole purpose of causing injury.

62.    As a direct result of Officer Anglea's excessive force, Plaintiff suffered injuries including bruising of the right eye, and physical, mental, and emotional pain and suffering. Plaintiff suffered anxiety and post-traumatic stress disorder when he had to enter the cell where Officer Anglea punched him and was afraid to be housed in the same unit as Officer Anglea.

63.    The injuries Plaintiff suffered as a result of Officer Anglea's excessive force are greater than *de minimis.*

64.    By reason of the foregoing, Plaintiff is entitled to compensatory and punitive damages in an amount to be proven at trial.

### JURY DEMAND

65.     Plaintiff hereby demands trial by jury.

WHEREFORE, Plaintiff prays for relief against Defendants as follows:

1.    On the First Cause of Action against Defendant Brooks, Defendant Jacquez, Defendant Bobs, Defendant Bills, and DOES 1-10, each in their individual capacity, for compensatory and punitive damages in an amount to be determined at trial; and

2.    On the Second Cause of Action against Defendant United States, for compensatory damages in an amount to be determined at trial; and

3.    On the Third Cause of Action against Defendant United States, for compensatory damages in an amount to be determined at trial; and

4.    On the Fourth Cause of Action against Defendant United States, for compensatory damages in an amount to be determined at trial; and

4905-2260-1248

5. On the Fifth Cause of Action against the DOE known as Officer Anglea, for compensatory and punitive damages in an amount to be determined at trial.

DATED March 3, 2025

HERSHNER HUNTER, LLP

By  /s/ *Elizabeth M. Stubbs*
Todd R. Johnston, OSB 992913
tjohnston@hershnerhunter.com
Amanda M. Walkup, OSB 934508
awalkup@hershnerhunter.com
Elizabeth M. Stubbs, OSB 214880
estubbs@hershnerhunter.com
Of Attorneys for Plaintiff